Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN CA 222791)
    thomas@setarehlaw.com
H. Scott Leviant (SBN 200834)
    scott@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Dr., Suite 315
Beverly Hills, California  90212
Telephone:   (310) 888-7771
Facsimile:    (310) 888-0109

Attorneys for Plaintiff RANDY PITRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY PITRE, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 8:17-cv-1281-DOC-DFMx<br><br>JUDGE:     Hon. David O. Carter<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>[Filed concurrently with Declaration of Shaun Setareh]<br><br>Date:        January 14, 2019<br>Time:        8:30 a.m.<br>Courtroom:  9D<br>Judge:       Hon. David O. Carter<br><br>Action Filed:    June 20, 2017<br>Removed:        July 21. 2017 |

TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

Plaintiff submits the following Brief in Reply in support of Plaintiff's Motion for Class Certification.

Dated: November 30, 2018                **SETAREH LAW GROUP**

By: _____

Shaun Setareh
Thomas Segal
H. Scott Leviant

Attorneys for Plaintiff

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

DISCUSSION .................................................................................................................. 3

    A.   Wal-mart's Assertion That Plaintiff Has Switched Theories is False ....... 3

    B.   Wal-mart's Attempted Merits Defenses Demonstrate the Propriety of
        Class Certification ........................................................................................ 6

    C.   Wal-mart's Purported Individualized Issues are Red Herrings. ............. 12

    D.   Wal-mart's Arguments About Article III Standing Do Not Warrant
        Denial of Class Certification. ................................................................... 16

    E.   Wal-mart's Arguments about Adequacy and Typicality are Meritless. .. 17

    F.   Manageability and Superiority Are Easily Satisfied in Statutory
        Violation Cases Like This Matter ............................................................ 18

    G.   The Addition of the New Class Representatives is Appropriate, But, As
        Discussed Herein, Plaintiff Is Adequate and Typical in His Own Right. 18

    H.   The Motion Does Not Improperly Allege A Failsafe Class .................... 19

    I.   Wal-mart Does Not Dispute at All the Numerosity of the Class or the
       Adequacy of Counsel ................................................................................ 20

II.   CONCLUSION ..................................................................................................... 20

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amgen v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013) .........1, 7

*Bercut v. Michaels Stores, Inc.,* 2017 WL 2807515 (N.D. Cal. 2017) ............................17

*Brazil v. Dell,* 2008 WL 2683629 (N.D. Cal. 2008)........................................................20

*Cameron v. E.M. Adams & Co.,* 547 F.2d 473 (9th Cir. 1976)........................................15

*Cavin v. Home Loan Ctr., Inc*., 236 F.R.D. 387 (N.D. Ill. 2006)................................ 2, 14

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009).................. 2, 14

*Dodds-Owens v. Kyphon, Inc*., 2007 WL 420191 (N.D. Cal. 2007) ...............................19

*Edelstein v. Westlake Wellbeing Properties, LLC,*

    2017 WL 54955153 (C.D. Cal. 2017) .........................................................................17

*Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. 2011) ...................13

*In re Autozone, Inc. Wage and Hour Employment Practices Litigation*,

    289 F.R.D. 526 (N.D. Cal. 2012)....................................................................................19

*Kamakahi v. American Society for Reproductive Medicine*,

    305 F.R.D. 164, 193 (N.D. Cal. 2015) ..........................................................................10

*Larroque v. First Advantage LNS Screening Sols, Inc.,*

    2016 WL 4577257 (N.D. Cal. 2016)..............................................................................17

*Lee v. Hertz Corporation*, 2016 WL 7034060 (N.D. Cal. 2016) ....................................17

*Lymburner v. U.S. Financial Funds, Inc.,* 263 F.R.D. 534 (N.D. Cal. 2010)..................14

*Nitsch v. Dreamworks Animation SKG Inc.,* 315 F.R.D. 270 (N.D. Cal. 2016) .............15

Poinsignon v. Imperva, Inc., No. 17-cv-05653-EMC,

    2018 U.S. Dist. LEXIS 60161 (N.D. Cal. Apr. 9, 2018) ......................................... 8, 10

*Polo v. Innoventions International*, LLC, 833 F.3d 1193 (9th Cir. 2016)........................16

*Pryor v. Aerotek Sci. LLC*, 278 F.R.D. 516 (C.D. Cal. 2011)...........................................13

*Robins v. Spokeo Inc*., 876 F.3d 1109 (9th Cir. August 15, 2017)............................. 1, 16

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133 (D.N.J. 2009) .................. 2, 14

*Syed v.M-I LLC*, 853 F.3d 492 (9th Cir. 2017) ....................................................... 7, 14, 15

*Terrell v. Costco Wholesale Corp.*, 2017 WL 2169805 (N.D. Cal. 2017) .....................17

*Tseng v. Nordstrom, Inc.*, 2014 WL 174946 (C.D. Cal. 2014) ........................................13

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016)........................2

**STATUTES**

15 U.S.C. §1681p..............................................................................................................15

**OTHER AUTHORITIES**

FTC Advisory Opinion to Leathers (Sept. 9, 1998) ...........................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Plaintiff and the putative class seek class certification of claims against Defendant WAL-MART STORES, INC. ("Wal-Mart" or "Defendant").  Plaintiff alleges that Wal-Mart obtained protected personal consumer information during employment-related background checks without following the clear and mandatory requirements of state and federal law.  Defendant opposes certification of Plaintiff's claims, but much of Wal-mart's "opposition" actually supports class treatment.

Wal-mart's opposition deviates substantially from certification issues, presenting arguments that have little to do with certification requisites.  For example, Wal-mart complains that Plaintiff shifted his theory of liability, focusing on the disclosure language in the Employment Application only recently.  That is false; Plaintiff expressly focused on the disclosure language in the Employment Application beginning with *pre-litigation* communications with Wal-mart.  That focus continued when counsel for Plaintiff and Wal-Mart conferred on multiple occasions regarding Plaintiff's theories of liability.  (Supplemental Declaration of Shaun Setareh ["Supp. Setareh Decl."], ¶ 13.)

Next, Wal-mart argues that it would prevail on the merits.  Were that true, then Wal-mart should relish certification, as it would decisively eliminate potential liability to a large class.  But a merits argument is misplaced in a certification analysis.  *Amgen v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 464-466 (2013).  In any event, the mess that Wal-mart made of its sprawling and overladen disclosures makes it abundantly clear that Wal-mart will not prevail on the merits.

Wal-mart also claims, as a classwide defense, that Article III standing is lacking.  Wal-mart's Article III argument, also misplaced in a certification analysis, cannot succeed.  The Ninth Circuit, in *Robins v. Spokeo Inc*., 876 F.3d 1109 (9th Cir. August 15, 2017), analyzed the "concreteness" element of similar intangible injuries under the FCRA and found that Article III standing exists.  The same outcome is inevitable here.  But even if, *arguendo*, Article III standing was absent, the remedy would be to dismiss without

prejudice and remand the matter to state court (from which Wal-mart originally removed the matter, claiming that federal jurisdiction exists:  "This action is a civil action for which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed pursuant to 28 U.S.C. § 1441(a), in that it appears from the Complaint that Plaintiff has filed an action involving a claim or right arising under the laws of the United States.").  (*See* Dkt. No. 1, at 2.)

Next, Wal-mart presents another oft-rejected basis for challenging certification, claiming that variation in damages is a basis for denying certification.  The possibility that some class members might have actual damages beyond just statutory damages has been repeatedly rejected as a reason to deny certification.  *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) (opt-out mechanism protects members of the putative class who might have claims for actual damages they want to pursue); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 141 (D.N.J. 2009); *Cavin v. Home Loan Ctr., Inc*., 236 F.R.D. 387, 392 (N.D. Ill. 2006) (class members who want to pursue actual damages can opt out of the class, but variances in damages does not alter the existence of a common nucleus of operative facts).  More broadly, the Ninth Circuit has soundly rejected the notion that variation in damages is a basis to deny certification. *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1155 (9th Cir. 2016) (even the need to individually prove damages does not defeat predominance).  Because only statutory damages are sought in this matter, even the potential for individualized damage proof is illusory. This matter, focusing on the singular question of the illegality of a couple of form sets used by Wal-mart to obtain protected person information about consumers, is the quintessential example of a matter that should receive class treatment.

Wal-mart then argues that this matter, which seeks only a fixed statutory penalty for each misuse of an unlawful disclosure form to access protected consumer information, would be "unmanageable."  Wal-mart complains that Plaintiff did not attempt a showing of how this case could be tried.  While it is difficult to discern whether this contention is simply hunting for a credulous Court, there is no doubt that Wal-mart's argument is

nothing short of silly.  The only issues that need to be adjudicated are whether the forms are lawful, whether any non-compliance was willful, the number of violations, and the amount to be awarded in statutory and punitive damages.  After a couple of witnesses testify to identify the forms at issue and confirm the process for their creation and distribution, and after evidence or a fact stipulation specifies the class size, the trier of fact will get out a calculator and multiply the statutory penalty assessed by the class size.  If this is "unmanageable," then it is not clear how the federal courts conduct any trials at all.

Wal-mart then assets that Plaintiff is inadequate and atypical because of his lack of percipient knowledge about what Wal-mart did or did not do.  Essentially, Wal-mart is arguing that Plaintiff's claims contain elements that they do not.  The gravamen of the violation of the FCRA alleged in this matter focuses entirely on what Wal-mart did.  The Plaintiff's personal knowledge about Wal-mart's conduct is not an element that Plaintiff must establish to prevail.  At the same time, Wal-mart argues that no other plaintiffs should be added as parties.  In other words, according to Wal-mart, nobody should be permitted to challenge its deficient FCRA disclosure practices.

Finally, Wal-Mart contends that the Class definition is "fail-safe," without explaining what a "fail-safe" Class definition actually is.  Because the Class definition does not turn on an issue of liability, it is *not* a "fail-safe" Class definition.

As this is, by any measure, a case that easily satisfies the prerequisites of Fed. R. Civ. P. 23, it should be certified without hesitation.

## **DISCUSSION**

### A.  **Wal-mart's Assertion That Plaintiff Has Switched Theories is False**

Wal-mart claims that Plaintiff has changed his position on which document is the stand-alone disclosure form at issue. In fact, from the outset of the case, Plaintiff's position has been consistent.  It is Wal-mart that has vacillated not Plaintiff. As set forth below, while Plaintiff has been consistent, Wal-mart apparently realized at the last minute that its sworn discovery responses leave it unable to defend the case, and it is now trying to

change its position in the Opposition, although without any declaration or explanation of the contradiction.[1]

On **October 12, 2016**, Setareh Law Group wrote to Wal-mart requesting Mr. Pitre's personnel file. (Supp. Setareh Decl., ¶ 3.) Wal-mart produced the personnel file on November 1, 2016. That file included a two page "Application for Employment." (Supp. Setareh Decl., ¶ 4, Exh. 1.) The second page of the Application for Employment was illegible. (*Id.*) However, Setareh Law Group obtained an apparently identical "Application for Employment" online and determined that the second page included an FCRA background check disclosure embedded with other boilerplate disclosures. (Supp. Setareh Decl., Exh. 2.) Aside from the "Application for Employment," no other document with an FCRA disclosure was produced with the personnel file. (Supp. Setareh Decl., ¶ 4.)

On **May 18, 2017**, Setareh Law Group wrote to Kelley Cross, who is a Senior Discovery Specialist in Wal-mart's Legal Department, requesting a legible copy of the Application for Employment and stating: "Much of the information on the document was illegible. Specifically, the second page with all the legal disclosures and acknowledgments was almost entirely illegible." (Supp. Setareh Decl., Exh. 3.) On **June 15, 2017**, Ms. Cross faxed a legible exemplar copy of the employment application that was substantially similar to the version obtained online. (Supp. Setareh Decl., ¶ 7 and Exh. 9.)

Given that Plaintiff's counsel wrote to Wal-mart's Legal Department and expressly requested a legible copy of the "legal disclosures" in the employment application, Wal-mart can hardly claim now to be surprised that a background check disclosure in that employment application is a basis for the claims.

Further, this lawsuit was filed on **June 20, 2017**. (Dkt. No. 1-1.) That was five days after Wal-mart's Legal Department for the first time provided a legible copy of the Application for Employment. Since that was the only FCRA disclosure form produced by

---

[1] Remarkably Wal-mart has chosen to oppose the motion without a single declaration from a Wal-mart employee explaining Wal-mart's practices, perhaps because such a declaration would only underscore the common nature of the issues in this case.

Wal-mart at that time, it is patently obvious that the allegations of this case were based on the Application for Employment. (Although it should be noted that Plaintiff will be able to prove that the form Wal-mart now belatedly identifies as the purported disclosure form is also unlawful.) The notion that Plaintiff had a last-minute change of position is simply false.

On **October 10, 2017**, Plaintiff propounded discovery to Wal-mart, including Request for Production 17 that sought all written FCRA disclosures. (Supp. Setareh Decl., Exh. 4.)

On **January 3, 2018**, Wal-mart produced documents including the form bates-stamped PROD0000011, which Wal-mart now asserts is the standalone disclosure form used with Plaintiff. (Supp. Setareh Decl., Exh. 5.) That production also included the two-page Application for Employment, further evidencing Wal-mart's knowledge that the FCRA disclosure embedded therein is at issue in this lawsuit. (Supp. Setareh Decl., Exh. 6.)

On **December 13, 2017**, Wal-mart provided a written interrogatory response which asserted that: "Before [consumer] reports are procured, the applicant is giving a consent form to authorize the consumer report and the applicant is also asked to provide certain information in connection with ordering the background check (referred to for purposes of these responses as the "Background Check Disclosure and Authorization"). For the majority of the period of time from June 20, 2013, the Background Disclosure and Authorization was provided to the Applicant in hardcopy form." (Dkt. 35-9: Exh. I, at 15.) On **January 23, 2018**, Wal-mart provided a verification for this interrogatory response. (Supp. Setareh Decl., Exh. 7.)

It is significant that the verified interrogatory response shows that Wal-mart views the FCRA disclosure as a single, multi-page integrated document called the "Background Check Disclosure and Authorization"), not a collection of stand-alone documents. But, Wal-mart, belatedly realizing that this sworn admission is fatal to its defense, now asserts that it provided a one page standalone disclosure to Plaintiff Pitre, which Mr. Pitre signed.

"Plaintiff executed the stand-alone disclosure form on November 19, 2015, the same day he interviewed for the position. Dkt No. 35-3 at 2."  (Dkt. No. 36: Opp. at 7:26-27.) Wal-mart *now* claims, in contradiction to its sworn discovery response, that "the whole FCRA packet . . . has always contained a variety of standalone documents – including the authorization and disclosure relating to a background report." (Dkt. No. 36: Opp. at 4:18-22.) As set forth below, the form that Wal-mart for the first time identifies as the standalone disclosure is also unlawful and not a standalone document consisting "solely of the disclosure."

**B.     Wal-mart's Attempted Merits Defenses Demonstrate the Propriety of Class Certification**

Wal-mart asserts that its disclosure forms have not materially changed over time and are and always have been legally compliant stand-alone disclosure documents:

> Although the length and contents of the packet have varied in minor ways over time, Ivy Dep. at 67:3-9, 68:3-19 (noting that the packet in use from November 2012 through November 2015 was 7 pages), as of November 5, 2015 "the whole FCRA packet" has been "twelve pages," and has always contained a variety of stand-alone documents—including the authorization and disclosure relating to a background report, *id.* at 50:1-51:15.

(Dkt. No. 36: Opp. at 4:18-22.)

Based on Wal-mart's assertion that the relevant forms have not differed materially over time, Wal-mart implicitly concedes that common questions of law and fact predominate.  Class certification should be granted. Then this Court or a jury can decide, on a class-wide basis, whether the forms at issue were lawfully compliant FCRA disclosures set forth in (1) stand-alone disclosure documents that are (2) clear and conspicuous.

Wal-mart's unrealistic prediction that it will prevail on the merits is not a basis for denying class certification. As the U.S. Supreme Court has said:

> Although we have cautioned that a court's class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim . . . Rule 23 grants courts no license to engage in free ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. . . . [A]n evaluation of the probable outcome on the merits is not properly a part of the certification question.

*Amgen v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 464-466 (2013).

Ultimately, whether Wal-mart will prevail on the merits of this case or not depends, predominantly, upon the way that the statute at issue, the Fair Credit Reporting Act, and a seminal Ninth Circuit decision, *Syed v.M-I LLC*, 853 F.3d 492 (9th Cir. 2017), are interpreted. Wal-mart's Opposition is conspicuously silent about the *Syed* decision, even though it is undoubtedly the controlling authority on the question of whether an FCRA disclosure form is a lawfully compliant stand-alone disclosure. Plaintiff discussed *Syed* extensively in the Motion at pages 3-5.

In *Syed,* the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Syed*, at 497-498. The Ninth Circuit held that under the plain language of the FCRA the required disclosure must be "in a document that consists solely of the disclosure." *Id.*, at 500. As the Ninth Circuit explained: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id.* The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting 'solely' of the disclosure: "a prospective employer's violation of the FCRA is "willful" when the employer includes "terms in addition to the disclosure." *Id.*, at 1.

A recent district court decision confirmed the clear holding of *Syed*: a violation

occurs whenever the employer adds *any* extraneous terms to the FCRA disclosure. In *Poinsignon v. Imperva, Inc.*, the district court held that a FCRA disclosure that included references to state law, a URL link to a privacy policy, and an acknowledgment of another document – the "Summary of Rights under FCRA" – violated the FCRA's "stand alone" requirement and constituted a willful violation. *Poinsignon v. Imperva, Inc.*, No. 17-cv-05653-EMC, 2018 U.S. Dist. LEXIS 60161 (N.D. Cal. Apr. 9, 2018).[2]

It cannot be gainsaid that the Application for Employment is not a stand-alone disclosure or that the language there is similar to other disclosure forms produced by Wal-mart.[3] The FCRA disclosure in the Application is embedded in a document which contains, among other things, employment history, education history, a box where the applicant enters their availability to work, references, an agreement to submit to drug testing, and a certification that the employment is at will. The inclusion of a FCRA disclosure within the Application for Employment has long been recognized as improper.

A Disclosure can only be combined with one other item, the consumer's

---

[2] The Ninth Circuit currently has a matter under submission in which it has been asked to confirm that the holding of *Syed* applies to all forms of surplusage, not just the liability waiver that was the form of surplusage violating the stand-alone requirement discussed in *Syed*. That matter is *Gilberg v. Cal. Check Cashing Stores, LLC, et al.*, Case no. 17-16263. Even if, contrary to expectations, the *Gilberg* Court seeks to limit *Syed* in some manner, that would still be a merits issue that should not determine the propriety of certification.

[3] Wal-Mart concedes that its Application describes an intention to obtain "background information," while its other disclosure forms refer to a "background report." (Dkt. No. 35-1: Depo. of 30(b)(6) Witness Ivy, at 59:24 – 60:5; *see also,* Dkt. 35-2: Exh. B, at 2.) But Wal-Mart universally contends that those two things are somehow different:

> As an individual, I feel like if you're looking at information, that's very broad. With regard to a background report, as a 30(b)(6) and for the FCRA documentation, a background report means that we're getting a consumer report from our credit reporting agency, on your criminal background.

(Dkt. No. 35-1: Depo. of 30(b)(6) Witness Ivy, at 60:19-24.) Wal-Mart's 30(b)(6) witness claimed to have no idea what was meant by "background information," either as a 30(b)(6) witness or as an executive at Wal-Mart. (Dkt. No. 35-1: Depo. of 30(b)(6) Witness Ivy, at 61:5-8.) Wal-Mart offers no explanation as to why including similar language in multiple documents would not undermine the "clear and conspicuous" requirement or create confusion. The Court need not resolve that issue now; it is sufficient to recognize that the issue is common to the Class. No corrections to this testimony were made by Wal-Mart.

authorization to proceed with the background check, but, in all other respects, the Disclosure *must* be set forth in a single, stand-alone document. Concerned about pervasive violations of this and related requirement by employers, the Federal Trade Commission ("FTC") has emphasized that a Disclosure form should not include *any* extraneous information *or* be part of another document. In response to one inquiry as to whether the disclosure may be set forth within an application for employment or whether it must be included in a separate document, the FTC stated:

> The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application -- no matter how "prominently" it appears -- is not "in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

FTC Advisory Opinion to Leathers (Sept. 9, 1998), available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98 (last visited November 29, 2018). This violation – the comingling of a Disclosure into the Employment Application – is one of several violations evident in Wal-mart's deficient and voluminous employment documents.

While the Employment Application violates the stand-alone requirement, the same is true of the document that Wal-mart claims was the stand-alone Disclosure that it provided to Pitre. Wal-mart asserts that: "Plaintiff executed the stand-alone disclosure form on November 19, 2015, the same day he interviewed for the position. Dkt No. 35-3 at 2." (Dkt. No. 36: Opp. at 7:26-27.) Dkt 35-3 is a document signed by Pitre and entitled "Background Report Authorization." Notably, the document states: "Additional information about your rights has been provided with you with this Authorization. Please review all of it BEFORE you sign below. Your signature confirms you have reviewed it . .

. .." Therefore, the document *explicitly is not a* <u>*stand-alone*</u> *disclosure*, as it requires the job applicant to certify that they have reviewed and read *other* documents.  It is worth emphasizing that, if Wal-Mart's forms clearly satisfied the "clear and conspicuous" and "stand-alone" requirements, they would not need to extract an acknowledgement that *other* documents were reviewed, in a transparent attempt at including exculpatory language.

The other forms suffer from similar deficiencies as that found unlawful in *Imperva*, discussed above. (*See* identification of common, deficient form elements in Dkt. 34: Mot. at 7-11, 20-22.)  Of course, if Wal-mart is correct that its disclosure forms were lawful, it should welcome class certification. *E.g., Kamakahi v. American Society for Reproductive Medicine*, 305 F.R.D. 164, 193 (N.D. Cal. 2015): "where a defendant has a classwide defense, class adjudication is a course it should welcome as all class members who did not opt out of the class action would be bound by the judgment."

It should also be noted that the use of multiple forms by Wal-mart in the form of the Application for Employment and the Background Report Authorization itself raises common issues of compliance with the stand-alone disclosure *and* clear and conspicuous disclosure requirements (these requirements are distinct, and the trier of fact could find Wal-mart liable for a violation of either *or* both).

Because Defendant used an Application that included a background investigation disclosure (Dkt No. 35-2: Exh. B), along with voluminous background check form packets that materially changed once within the class period (Dkt Nos. 35-4 and 35-5: Exhs. D and E, or Dkt Nos. 35-3, 35-6, and 35-7: Exhs. C, F, and G), the legal standard for compliance with the "clear and conspicuous" requirement is common to the entire class, and can be applied to the two proposed sub-classes.  If it is determined that Wal-Mart's forms, or any of them, violate legal standards under the FCRA and ICRAA, then the next common legal issue that must be decided is whether the violation is willful, which also focuses solely on Wal-Mart's conduct and not class member conduct.

Exhibits D and E (Dkt Nos. 35-4 and 35-5) contain extensive surplusage on the very

first page of the multi-page packet, including statements by Wal-Mart about its purpose,[4] information about multiple CRAs, and information related to a variety of different states. The second page of the multi-page document contains exculpatory provisions along with the bare authorization.[5]  In addition, Wal-Mart improperly requires an attestation of accuracy in the disclosure and authorization packet.[6]

The first and second pages of Exhibits D and E contain contradictory information, with one page (improperly) advising California residents that they can obtain a copy of any report by paying for copy costs, while the second page offers California residents a "free copy."  (Exhs. D and E, at 1, 2.)  Page three of the Exhibits D and E includes a criminal history supplement page, adding to the list of surplusage in the disclosure packet.

The FCRA package used by Wal-Mart beginning on November 5, 2015 is a sprawling, 12-page packet that includes state law information.  (Dkt. No. 35-1: Depo. of 30(b)(6) Witness Ivy, at 50:1-20; Exh. C.)  Exhibit F (Dkt No. 35-6) contains the balance of the 2015 disclosure and authorization packet.  Exhibit G (Dkt No. 35-7) is the full, 12-page disclosure and authorization packet placed into service by Wal-Mart in 2016.  It is substantially similar to the 2015 packet. (*Compare*, Dkt Nos. 35-3 and 35-6: Exhs. C and F *with* Dkt No. 35-7: Exh. G.)  Common to the Class are the questions of (1) whether the 12-page packet and the Employment Application satisfy the stand-alone requirement, (2) whether the 12-page packet on it own satisfies the stand-alone requirement, and (3)

---

[4] "In the interest of maintaining a safe shopping and work environment for our customers and associates, Wal-Mart Stores, Inc. ("Wal-Mart") will order a consumer report and/or investigative consumer report ("background check report") on you in connection with your employment application, and if you are hired, or if you already work for Wal-Mart, may order additional background check reports on you for employment purposes." (Dkt Nos. 35-4 and 35-5: Exhs. D and E, at 1.)

[5] "After carefully reading this Background Check Disclosure and Authorization form, I authorize Wal-Mart to order a background check report on me that is prepared by a consumer reporting agency." (Dkt Nos. 35-4 and 35-5: Exhs. D and E, at 2.)

[6] "I promise the information that I provided on this form and the attached Criminal History Supplement is true and correct. I understand dishonesty will disqualify me from consideration for employment with Wal-Mart, or if I am hired or work for Wal-Mart, that I may be fired."  (Dkt Nos. 35-4 and 35-5: Exhs. D and E, at 2.)

whether Wal-mart's ponderous set of documents satisfies the clear and conspicuous requirement.

In its Opposition, Wal-Mart claimed that the testimony of its Fed. R. Civ. P. 30(b)(6) witness was taken out of context when Plaintiff noted her admission that, in 2015, Wal-Mart moved state law information onto separate pages to "make it clearer."  (Dkt. No. 35-1: Depo. of 30(b)(6) Witness Ivy, at 71:4-12.)  Were that the case, then it should have been trivial for Wal-Mart to demonstrate the correct context with the inclusion of additional testimony.  Wal-Mart did not demonstrate that a different meaning should be attributed to her admission.  In fact, all one needs to do is look at the form sets utilized by Wal-Mart to conclude that the simplicity and clarity mandated by the FCRA and ICRAA are sorely lacking.  Wal-Mart allowed bureaucratic sprawl to infect its forms, and the Congress chose not to include that as a recognized exception to full compliance with the FCRA.

If it comes down to a discussion of the merits – which it should ***not*** on a motion for class certification – the record supports the conclusion that Plaintiff, and not Wal-mart, is more likely to prevail.

### C.   <u>Wal-mart's Purported Individualized Issues are Red Herrings.</u>

Wal-mart asserts that that the following litany of individualized issues exist: "(a) whether Walmart actually procured a background report on that applicant, (b) whether the applicant read the allegedly noncompliant disclosure, (c) whether an applicant who claims to have received an improper disclosure would have signed the authorization regardless, because the allegedly improper language did not confuse him or her, (d) whether the applicant who claims to have received an improper FCRA disclosure, and further claims that it confused him, nevertheless learned more than two years before the filing of the complaint that Walmart had ordered a background report, and (e) whether the applicant who claims to have received an

improper FCRA disclosure, and further claims that it confused him, declined

to work at Walmart for whatever reason."

(Dkt. No. 36: Opp. at 12:23-13:5.)

The first issue, whether Wal-mart procured a consumer report, is something that obviously can be determined from Wal-mart's records. Plaintiff does not understand Wal-mart to contend otherwise. Wal-mart cites no authority for the proposition that whether an applicant read the disclosure form, would have signed it anyway, or whether the applicant declined to work at Wal-mart, are in any way elements of a statutory FCRA claim. They are not. These are red herrings.

Tellingly, Wal-mart provides no authority for the proposition that these red herrings raise individualized issues in this case involving statutory requirements for providing background checks. Instead, Wal-mart states: "As courts have recognized in similar situations, these questions all call for highly individualized inquiries that a court cannot answer on a class-wide basis with common proof." (Dkt. No. 36: Opp. at 13:6-16.) To support its claim that class certification has been denied "in similar situations" Wal-mart cites **not** to FCRA cases but instead to two wage and hour cases, *Tseng v. Nordstrom, Inc*., 2014 WL 174946 (C.D. Cal. 2014) and *Pryor v. Aerotek Sci. LLC*, 278 F.R.D. 516 (C.D. Cal. 2011). *Tseng* was a case involving whether or not the defendant retailer provided "suitable seating" to retail employees as required by California law. It involved looking at different job positions to determine whether it was feasible for the employer to permit the use of seats. *Tseng*, at *4. *Pryor* was a wage and hour action alleging uncompensated off-the-clock work. These cases are not remotely similar.

In more analogous situations, Courts have concluded otherwise.  Courts in California have recently ruled that differences in form contracts or disclosures do *not* preclude certification. *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900, at *10 (N.D. Cal. 2011) (granting in part motion for class certification, despite variations in contract language, noting that "[t]he variations among these agreements, however, are manageable, can be kept straight, and will not overwhelm the main themes of the case.");

*Lymburner v. U.S. Financial Funds, Inc.,* 263 F.R.D. 534, 541 (N.D. Cal. 2010): "even if the disclosures were not identical, claims need only be reasonably co-extensive to satisfy the predominance requirement."

Wal-mart's argument that statutory damages raise individualized issues also fails. Courts have repeatedly recognized that this is incorrect. *See Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) (certifying class in FCRA case and noting that "given the availability of the opt-out mechanism, courts in this Circuit have generally rejected the notion that limiting claims to statutory damages renders class certification inappropriate... The fact that some members of the putative class might have claims for actual damages is not a true conflict of interest between the representative and other class members in this case, where class members with significant actual damages may opt-out of the class litigation."); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 141 (D.N.J. 2009); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) ("The only non-common question of law or fact identified by HLC is that some class members might have actual damages. This argument is a nonstarter because the Cavins are seeking only statutory damages, and those class members who want to pursue actual damages can opt out of the class. Furthermore, the mere fact that the damages may differ does not alter the existence of a common nucleus of operative facts.")

Under *Syed,* the issue of willfulness turns on whether Wal-mart's interpretation of the statute is reasonable given the plain language of the statute. Without question, that is a common issue, not an individualized one. Unsurprisingly, none of the cases cited by Wal-mart where statutory damages were found to raise individualized issues involve the stand-alone disclosure requirement of the FCRA.

In fact, Wal-mart's cases where statutory damages raised individualized issues are readily distinguishable. For example, in the unpublished Fourth Circuit decision of *Soutter v. Equifax Services, Inc.,* 498 Fed. Appx. 260 (4th Cir. 2012) the issue was whether the defendant credit reporting agency had taken adequate steps to ensure the accuracy of information in each background report. Obviously, that is an issue that can differ from

consumer to consumer. *Gomez v. Kroll Factual Data*, 2014 WL 1456530 (D. Colo. 2014) involved similar issues regarding the accuracy of information in consumer reports. By contrast, Wal-mart offers no argument that the same disclosure form can be lawful for one consumer but not another, or that willfulness under these facts varies in each transaction. It does not because it cannot.  The strict requirements imposed under the FCRA before a background check is permitted are not tied to consumer behavior; the entire compliance framework specifies the *employer's* obligations.

Wal-mart fares no better when it argues that issues pertaining to the statute of limitations should defeat certification. At worst, that is an argument that the class period should be limited to two years prior to the filing of the complaint in this case. Under 15 U.S.C. §1681p, the FCRA has a two-year statute from the date of discovery or a five years statute from the date of the violation. Thus, when the violation was discovered is only relevant for claims more than two years prior to the filing of the complaint. The statute of limitations is a class-wide defense. As the Ninth Circuit has held: "The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones." *Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir. 1976); *accord Nitsch v. Dreamworks Animation SKG Inc.,* 315 F.R.D. 270, 307 (N.D. Cal. 2016): "it is clear as a general matter that a statute of limitations defense does not automatically preclude certification where common questions otherwise predominate." Wal-mart offers no argument for why this Court should depart from the general rule in this case.

Further, in *Syed,* the Ninth Circuit rejected the employer's argument that discovery occurs when the FCRA disclosure is provided, instead holding that it occurs when the employee (or applicant) learns that the employer did in fact run a background check and obtain the protected information.  *Syed,* at 1047.  Wal-Mart is certainly free to introduce evidence that it supplied Class members with the results of its background checks, but, absent that, Class members would have no way of knowing when protected information was obtained, since they did not observe the company obtaining their information and employers routinely claim to do background checks but do not always do so.

**D.**     <u>**Wal-mart's Arguments About Article III Standing Do Not Warrant**</u>
<u>**Denial of Class Certification.**</u>

The issue of Article III standing does not defeat commonality. Under the Ninth Circuit's decision in *Robins v. Spokeo Inc*., 876 F.3d 1109 (9th Cir. August 15, 2017) all class members have Article III standing because a claimed statutory violation of the FCRA is sufficient to confer Article III standing. In that case, the Ninth Circuit, on remand from the United States Supreme Court, considered whether a statutory violation of the FCRA gives rise, without more, to a concrete injury that can support Article III standing. The Ninth Circuit answered that question in the affirmative explaining as follows: "As other courts have observed, the interests that the FCRA protects also resemble other reputational and privacy interest that have long been protected in the law. . . .Just as Congress's judgment about an intangible harm is important to our concreteness analysis, so is the fact that the interest Congress identified is similar to others that traditionally have been protected." *Id.* at 1115. The Ninth Circuit further explained that "unauthorized disclosure in violation of FCRA's privacy protections is a concrete harm." *Id.* It follows that Article III standing exists here where Wal-mart obtained Plaintiffs' information without a legally compliant disclosure form.

If, however, Wal-mart is right, and some additional injury is required (such as not being hired) neither Plaintiff Pitre nor the proposed additional class representatives claim such an injury. Therefore, if the Court agrees with Wal-mart's interpretation of the law concerning Article III standing, the case was improperly removed by Wal-mart and should be remanded to state court. An FCRA action can be filed in state court as this one was. 15 U.S.C. §1681p: "An action to enforce any liability created under this subchapter may be brought in any appropriate United States District Court . . . or in any other court of competent jurisdiction." As the Ninth Circuit has said, where subject matter jurisdiction is lacking, the remedy is to remand a case to state court. *Polo v. Innovations International*, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016): "Remand is the correct remedy because a

failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III."

Multiple courts have remanded FCRA actions to state court when the defendant asserted that Article III standing is not adequately alleged.  For example in *Lee v. Hertz Corporation*, 2016 WL 7034060 *6 (N.D. Cal. 2016) the district court granted a motion to dismiss but remanded the action to state court. Similarly, in *Larroque v. First Advantage LNS Screening Sols, Inc.,* 2016 WL 4577257 *7-8 (N.D. Cal. 2016) the district court remanded the action to state court. *Accord Terrell v. Costco Wholesale Corp.*, 2017 WL 2169805 *2 (N.D. Cal. 2017); *Bercut v. Michaels Stores, Inc.,* 2017 WL 2807515 *5 (N.D. Cal. 2017); *see also Edelstein v. Westlake Wellbeing Properties, LLC*, 2017 WL 54955153*3 (C.D. Cal. 2017): "Since the California Constitution does not contain a 'case or controversy' requirement like the one in the Federal Constitution, Plaintiffs may fare better in state court."

### E.  **Wal-mart's Arguments about Adequacy and Typicality are Meritless.**

Plaintiff Pitre will not dignify Wal-mart's belittling of his reliance on prayer to assist him in making decisions with a response.  (Dkt. No. 36: Opp. at 3:1.) Suffice it to say that Plaintiff is an adequate class representative. He has been actively involved in the litigation and has been deposed. He understands the fiduciary nature of his role as a class representative:

Q.     What are your duties and obligations as a proposed representative?

A.     I'm representing a group of victims who are seeking justice.

(Supp. Setareh Decl., Exh. 8: Pitre Tr. 27:17-24.)

To be sure there have been times when Mr. Pitre's medical condition of chronic pancreatitis has caused him difficulty.  (Supp. Setareh Decl., Exh. 8: Pitre Tr. 23:2-25.) He now has a better course of medication. (Supp. Setareh Decl., Exh. 8: Pitre Tr. 24:2-5.) The proposed additional representatives Cassandra Walters and Desirae Wilson are ready to assist with the prosecution of this action. Of course, Wal-mart, in arguing that Mr. Pitre is

inadequate but also opposing the additional representatives is really asserting that nobody should prosecute this action.

Wal-mart also suggests that Plaintiff is atypical because he 1) realized that it was a possibility that a background check would be done and 2) did not know for certain whether such a check had been done. In fact, this almost certainly makes Plaintiff highly typical of the class who would be aware generally that employers sometimes do checks, but who would not know if one was ordered since this would occur outside their presence.

## F. **Manageability and Superiority Are Easily Satisfied in Statutory Violation Cases Like This Matter**

As to manageability and superiority, Wal-mart simply repeats its argument that individualized issues predominate, speculating that the action will "require literally millions of mini-trials." (Dkt. No. 36: Opp. at 15:24-26.) As set forth above, that argument is meritless based on purported individualized issues that are illusory. The only issues that need to be adjudicated are whether the couple of form sets Wal-mart used during the Class period are lawful, whether any non-compliance with the FCRA was willful, the number of violations, and the amount to be awarded in statutory and punitive damages. A handful of witnesses will be called on testify about the identity of the forms at issue and confirm the process for their creation and distribution, and after evidence or a fact stipulation specifies the class size, the trier of fact will get out a calculator and multiply the statutory penalty assessed by the class size. This matter is as far from an "unmanageable" class action as one can get. Wal-mart's claims to the contrary are unworthy of serious consideration.

Most fatal to any argument on superiority, Wal-mart fails to identify any alternative way that the claims in this case can be litigated.

## G. **The Addition of the New Class Representatives is Appropriate, But, As Discussed Herein, Plaintiff Is Adequate and Typical in His Own Right.**

Wal-mart, focused on Plaintiff's concurrently pending motion for leave to amend

and add additional class representatives, argues the new class representatives should not be added because of the Scheduling Order which set a deadline of January 2, 2018. Of course, the difficulties with Mr. Pitre did not occur until July of 2018. And, Wal-mart did not even produce the disclosure forms it contends are at issue until January 3, 2018, conveniently necessitating through its own conduct that important class discovery would occur *after* the deadline to add parties had passed. Good cause is thoroughly demonstrated for this purpose-specific amendment.

In addition, as set forth in the Motion for Leave to Amend, Plaintiff's counsel offered to make the new representatives available for deposition but Wal-mart declined. Wal-mart is not concerned about addressing any claimed inadequacy of the proposed representative. Wal-mart is only interested in ensuring that *no* person will be able to litigate the legality of its disclosure and background check activities.

### H.   The Motion Does Not Improperly Allege A Failsafe Class.

Plaintiff is puzzled by the fact that Wal-mart's experienced counsel would suggest that the proposed class herein is a "fail-safe class." A fail-safe class is one where if the defendant prevails on the merits, it means there was no class as defined, for example: "All persons defrauded by Defendant." If the defendant never defrauded anyone, there never was a class. A fail-safe class is also described as a class definition in which liability is assumed as a condition of membership.

For example, a district court found that there was a fail-safe class where the class was only employees "to whom Defendant failed to fully reimburse all mileage" noting that "this is problematic because it seems to define the class in such a way that the class members either win or are not in the class*." In re Autozone, Inc. Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526, 545 (N.D. Cal. 2012). Similarly a fail-safe class was found where the class was employees "who have experienced gender discrimination." *Dodds-Owens v. Kyphon, Inc*., 2007 WL 420191 *3 (N.D. Cal. 2007) and where the class was of consumers who purchased products that were "falsely advertised."

*Brazil v. Dell*, 2008 WL 2683629 *7 (N.D. Cal. 2008).

The class definition here in the Complaint is "[Wal-mart's] current, former, and prospective applicants for employment in the United States who applied for a job . . . at any time during the period for which a background check was performed. (Dkt. No. 1-1 at ¶ 10(A).) The motion has similar classes and subclasses.  (Dkt. 34: Mot. at 11-12.) Notably, the classes are defined by reference to objective facts, and the definitions do not turn on liability or assume liability exists. The Classes will not cease to exist if Wal-mart's practices are deemed lawful. Rather, if Wal-mart's practices are deemed lawful Wal-mart will prevail against the Class. Therefore, the proposed Classes are not fail-safe classes.

## I.      Wal-mart Does Not Dispute at All the Numerosity of the Class or the Adequacy of Counsel

While Wal-mart's arguments about some certification requisites, such as manageability, typicality, and class representative adequacy are, at best paltry, Wal-mart does not dispute that the Class is numerous or that Plaintiff's Counsel are adequate to pursue this matter.

## II.      CONCLUSION

For the reasons stated in Plaintiff's Motion and above, Plaintiff requests that the Court grant class certification as requested.

Dated: November 30, 2018          **SETAREH LAW GROUP**

By: _____
Shaun Setareh
Thomas Segal
H. Scott Leviant

Attorneys for Plaintiff