Case No. SA CV 17-01281-DOC-DFMx            Date: October 18, 2019

Title: RANDY PITRE ET AL. v. WAL-MART STORES, INC. ET AL.

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING DEFENDANT'S MOTION TO DECERTIFY [63], REMANDING THE ACTION, AND DENYING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [62] AND PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION [72]**

     Before the Court are three motions (the "Motions"): Defendant Wal-Mart Stores, Inc.'s ("Defendant" or "Wal-Mart") Motion for Summary Judgment or, in the Alternative, for Summary Adjudication ("MSJ") (Dkt. 62); Defendant's Motion to Decertify (Dkt. 63); and Plaintiffs' Motion for Summary Adjudication of First Cause of Action ("MSA") (Dkt. 72).[1] Having reviewed the papers submitted by Plaintiffs and Defendant, the Court finds that it must GRANT Defendant's Motion to Decertify and REMAND the action to the Superior Court of California, County of Orange.

---

[1] The Plaintiffs in this action are Randy Pitre, Desirae Wilson, and Cassandra Walters ("Pitre," "Wilson," and "Walters," respectively, and collectively "Named Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class").

Accordingly, Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Summary Adjudication are both DENIED AS MOOT.

## I. Background

This case arises from Defendant's job application process, and whether its background check procedures complied with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Investigative Consumer Reporting Agency Act ("ICRAA"), Cal. Civ. Code § 1786 *et seq.* (West 2019).

### A. Facts

The following facts are drawn from Plaintiffs' First Amended Complaint ("FAC") (Dkt. 51), the Responses and Supplemental Responses of Named Plaintiffs to Defendant's Interrogatories ("Pitre Interrog.," "Wilson Interrog.," and "Walters Interrog.") (Dkt. 63-3, Exhibits 4, 5, and 6, respectively), and Defendant's Supplemental Responses to Plaintiffs' Special Interrogatories ("Wal-Mart Interrog.") (Dkt. 72-13, Ex. 10).[2]

Each of the Named Plaintiffs applied for a job at Wal-Mart, and each was subsequently hired: Pitre in November 2015, Wilson in December 2017, and Walters in February 2014. FAC ¶¶ 4-6. Defendant is a Delaware corporation doing business in the State of California. *Id.* ¶ 7. Plaintiffs allege that, while evaluating Plaintiffs for employment, Defendant procured credit and background reports about Plaintiffs in violation of the FCRA and ICRAA.[3] *Id.* ¶ 29. Specifically, Plaintiffs allege that Defendant ran afoul of the FCRA's disclosure requirements by willfully including extraneous information in disclosure forms, *id.* ¶¶ 34-35, and by inadequately informing Plaintiffs of their rights under the FCRA, *id.* ¶¶ 44-49. This same conduct, according to Plaintiffs, also violated the analogous provisions of the ICRAA. *Id.* ¶¶ 56-64. Based on Defendant's discovery responses, Plaintiffs claim that Wal-Mart procured background checks on approximately 6,547,400 job applicants using deficient disclosure forms in the relevant time period (between June 2012 and March 2019). Wal-Mart Interrog., Dkt. 72-13, Ex. 10 at 3-4.

---

[2] To the extent any of these facts are disputed, the Court concludes they are not material to the disposition of any of the Motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

[3] In their FAC, Plaintiffs alleged that Defendant procured "a consumer report and/or investigative consumer report," which are defined in 15 U.S.C. § 1681a(d) and § 1681a(e), respectively. FAC ¶ 29. Named Plaintiffs, however, no longer contend that Wal-Mart procured an *investigative* consumer report. Pitre Interrog., Dkt. 63-3, Ex. 4 at 4; Wilson Interrog., Dkt. 63-3, Ex. 5 at 8; Walters Interrog., Dkt. 63-3, Ex. 6 at 8.

### B.　　Procedural History

Plaintiff Pitre filed his original Complaint in the Orange County Superior Court on June 20, 2017. The case was then removed to this Court, pursuant to 28 U.S.C. § 1441(a). Defendant filed a Motion to Dismiss as to certain state law claims (Dkt. 13), which this Court granted on November 8, 2017 (Dkt. 26). On October 15, 2018, Plaintiff Pitre filed a Motion for Class Certification (Dkt. 34), and, in light of his health problems, also moved to add Plaintiffs Wilson and Walters as additional class representatives (Dkt. 33). The Court granted both motions on January 17, 2019 (Dkt. 47). The Class was defined as follows:

> All of DEFENDANTS' current, former and prospective applicants for employment in the United States who applied for a job with DEFENDANTS at any time during the period for which a background check was performed beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action.

Dkt. 47 at 3. Named Plaintiffs filed their FAC on March 6, 2019, in which they brought the following three claims on behalf of themselves and the Class:

(1) failure to make proper disclosure in violation of the FCRA (15 U.S.C. § 1681b(b)(2)(A));

(2) failure to give proper summary of rights in violation of the FCRA (15 U.S.C. §§ 1681d(a)(1), 1681g(c)); and

(3) failure to make proper disclosure in violation of the ICRAA (Cal. Civ. Code § 1786 *et seq.*).

*See generally* FAC.

On July 24, 2019, Defendant filed the instant MSJ and Motion to Decertify. Plaintiffs filed the instant MSA on July 25, 2019. Each of the three Motions was followed by Opposition and Reply briefs, the last of which was submitted on October 1, 2019.[4]

---

[4] The MSJ Opposition (Dkt. 88) and MSJ Reply (Dkt. 94) were filed on August 21, 2019 and September 11, 2019. The Decertification Opposition (Dkt. 97) and Decertification Reply (Dkt. 100) were filed on September 24, 2019

## II.  Legal Standard

### A.  Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. See *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

---

and October 1, 2019. The MSA Opposition (Dkt. 89) and MSA Reply (Dkt. 95) were filed on August 22, 2019 and September 12, 2019.

### B.　　Standing

Under Article III of the Constitution, the judicial power of the United States, vested in the federal courts, extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1-2. Because the Constitution does not precisely define the reach of this judicial power, courts have developed the doctrine of standing. While some aspects of standing doctrine are "merely prudential considerations," it also contains a "core component," the case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To prevent "federal courts [from] exceed[ing] their authority," the law of Article III standing "confines the federal courts to a properly judicial role" by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

This "irreducible constitutional minimum" has three requirements. First, the plaintiff must have suffered a concrete and particularized injury in fact, which must be actual or imminent, rather than speculative. Second, the injury must be fairly traceable to the defendant's alleged conduct. Third, the injury must be likely redressable by a favorable decision by the court. *Lujan*, 504 U.S. at 560-61 (1992). These requirements must be met for each claim the plaintiff brings, and for each remedy sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

The relevant injury, for purposes of Article III standing, can be the violation of a right defined by statute; that is, Congress can elevate "previously inadequate" injuries "to the status of legally cognizable injuries." *Lujan*, 504 U.S. at 578 (citations omitted). However, the violation of a statutory right does not automatically constitute an injury in fact, and may not be sufficient to support standing. *Spokeo*, 136 S. Ct. at 1549. As the Supreme Court has explained, "a bare procedural violation, divorced from any concrete harm," cannot satisfy the injury-in-fact requirement. *Id.* A key inquiry, then, is not merely whether a statutory right was violated, but whether that violation actually harmed (or posed some risk of harm) to some concrete interest. *See id.* at 1549-50; *see also Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019) (reaffirming that *Spokeo* "rejected the premise" that an injury in fact automatically exists solely because a statute grants the plaintiff a right and authorizes suits to enforce said right); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing").

The burden of proof for establishing standing, which rests with the party seeking federal jurisdiction, must be met with adequate support at each stage of the litigation.

*Lujan*, 504 U.S. at 561. In particular, at the summary judgment stage, "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" to demonstrate standing. *Id.*

Finally, the requirements of standing apply with equal force to class actions as they do to individual litigants. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). To determine whether a class has standing, courts analyze the standing of the class representatives. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). If none of the class representatives can establish standing, then they may not seek relief in federal court, either for themselves or on behalf of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Under Ninth Circuit precedent, when a class has been certified and all class representatives are later found to lack standing, "the class should be decertified and the case dismissed." *NEI*, 926 F.3d at 532.

## III.     Discussion

Plaintiffs argue that Defendant violated the FCRA and ICRAA by procuring background checks on Wal-Mart job applicants, without making adequate disclosures or giving the requisite summaries of rights. In the instant MSJ, Defendant argues it is entitled to Summary judgment on Plaintiffs' claims because (1) all three Named Plaintiffs lack standing; (2) no reasonable fact-finder could conclude that Defendant violated the FCRAA or ICRAA; and (3) Plaintiffs have failed to prove that Defendant willfully violated the FCRAA or ICRAA. Defendant accordingly seeks judgment in its favor on all three of Plaintiffs' claims. Plaintiffs, by contrast, argue in their MSA that the Court should enter judgment in their favor as to the first cause of action, because none of Defendant's disclosure forms abide by the strictures of the FCRA, and because these statutory violations were willful.

The Court agrees with Defendant's argument that Plaintiffs lack standing under Article III. Therefore, as explained in what follows, the Court must decertify the class and remand the action to the state court. It is beyond the Court's constitutional reach to rule on Defendant's MSJ or Plaintiffs' MSA, and the Court prescinds from any further consideration thereof.

### A.     Named Plaintiffs Do Not Satisfy the Article III Standing Requirements

As noted above, whether Named Plaintiffs have standing also determines whether the Class has standing. *See NEI*, 926 F.3d at 532. Considering each cause of action in turn, *see Davis*, 554 U.S. at 734, the Court finds that Named Plaintiffs lack standing for

each claim in the FAC. Consequently, neither Named Plaintiffs nor the Class has standing under Article III.

### 1.     The Second Cause of Action

Plaintiffs' second cause of action alleges that Defendants failed to give a proper summary of rights, in violation of 15 U.S.C. §§ 1681d(a)(1) and 1681g(c). Pursuant to § 1681d(a)(1):

> A person may not procure or cause to be prepared an *investigative consumer report* on any consumer unless—
> (1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to [15 U.S.C. § 1681g(c)].

15 U.S.C. § 1681d(a)(1) (2019) (emphasis added). Subsection (b) provides that:

> Any person who procures or causes to be prepared an *investigative consumer report* on any consumer shall, upon written request made by the consumer within a reasonable period of time after the receipt by him of the disclosure required by subsection (a)(1), make a complete and accurate disclosure of the nature and scope of the investigation requested. The disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

15 U.S.C. § 1681d(b) (emphasis added). And § 1681g(c), for its part, details the required contents of the "written summary of rights" referenced in § 1681d(a)(1). *See* 15 U.S.C. § 1681g(c) (2019).

Plaintiffs allege that Defendant's disclosures violated § 1681d(a)(1) for three reasons: first, because they failed to satisfy the written disclosure requirements of 15 U.S.C. § 7001; second, because they failed to inform Plaintiffs of their rights under § 1681d(b); and third, because they did not contain the information required by § 1681g(c). FAC ¶¶ 41-42, 44-49.

Plaintiffs, however, are not under the aegis of the disclosure requirements of § 1681d(a)(1). By its own terms, § 1681d(a)(1) is applicable only when an *investigative* consumer report has been "procure[d] or cause[d] to be prepared." This limitation is fatal to Plaintiffs' second cause of action. As mentioned in Footnote 3 above, the FCRA differentiates between "consumer reports," defined in § 1681a(d), and "investigative consumer reports," defined in §1681a(e). Plaintiffs did originally allege that Defendant procured "a consumer report and/or investigative consumer report" as part of the hiring process. FAC ¶ 29. But during discovery, the Named Plaintiffs withdrew this allegation with respect to investigative consumer reports; in their responses to Defendant's interrogatories, each Named Plaintiff stated that "Plaintiff does not contend that Wal-Mart procured an investigative consumer report." Pitre Interrog., Dkt. 63-3, Ex. 4 at 4; Wilson Interrog., Dkt. 63-3, Ex. 5 at 8; Walters Interrog., Dkt. 63-3, Ex. 6 at 8.

As such, the disclosure requirements of § 1681d(a)(1) are inapplicable, including its requirement of a written summary of rights in accordance with § 1681g(c). If Defendant never procured an investigative consumer report about any of the Named Plaintiffs, then they cannot claim any injury to their statutory rights under § 1681d(a)(1). Without an injury in fact, none of the Named Plaintiffs has Article III standing to bring the second cause of action. And, pursuant to *NEI* and *O'Shea*, Named Plaintiffs' lack of standing also bars them from bringing the second cause of action on behalf of the Class. See *NEI*, 926 F.3d at 532 (citing *O'Shea*, 414 U.S. at 494).

### 2.　　　　The First Cause of Action

Plaintiffs' first cause of action alleges that Defendants failed to make the FCRA disclosures required under § 1681b(b)(2)(A), which provides that:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused

>       to be procured, in a document that consists solely of the
>       disclosure, that a consumer report may be obtained for
>       employment purposes; and
>   (ii) the consumer has authorized in writing (which authorization may
>       be made on the document referred to in clause (i)) the
>       procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (2019). Plaintiffs allege that Defendant's disclosure forms, in violation of these strictures, are not standalone documents and contain extraneous information, FAC ¶¶ 30-31, and that their "privacy and statutory rights [were] invaded" as a result of these defective disclosures, FAC ¶ 36.

Even assuming, arguendo, that Defendant's written disclosures were inadequate under the FCRA, Named Plaintiffs have failed to identify an injury stemming from this statutory violation that can suffice to support Article III standing. The Supreme Court's decision in *Spokeo*—and the law of standing it expounds vis-à-vis statutory injuries—is illuminating and dispositive.

*Spokeo*, as explained above, clarified that a violation of a statutory right does not necessarily give rise to an injury in fact, even when the statute also confers a concomitant right of action. 136 S. Ct. at 1549. To give rise to standing, the statutory violation must also be accompanied by a "concrete injury"—either a *de facto*, actually existing injury, or "the risk of real harm." *Id.* at 1548-49. And the Supreme Court held, in unambiguous terms, that "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. There, the plaintiff, Mr. Robins, alleged that a consumer reporting agency had willfully failed to comply with FCRA procedural safeguards and had generated a profile on him containing a significant amount of misinformation. *Id.* at 1545-46. But these allegations were insufficient to support standing. Although "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk"—the precise injury and procedural violation Mr. Robins alleged—the Court refused to find standing on the basis of a "bare procedural violation," and remanded to the Ninth Circuit to determine whether Mr. Robins had alleged a *concrete* injury in fact. *Id.* at 1549-50.

But Named Plaintiffs, like Mr. Robins, have alleged only a "bare procedural violation" in their first cause of action. Mr. Robins, in fact, may have had a more plausible basis for standing; as the *Spokeo* dissent persuasively argued, the misinformation in Mr. Robins's profile posed a concrete risk of harm to his employment and romantic prospects. *See id.* at 1556 (Ginsburg, J., dissenting). Named Plaintiffs,

however, have not met their burden at the summary judgment stage to establish a concrete injury or risk thereof.

The procedural safeguards in § 1681b(b)(2)(A) are ostensibly aimed at ensuring that consumer reports, "for employment purposes," are only procured with the subject's prior clearly informed authorization. *See* § 1681b(b)(2)(A); *see also* 15 U.S.C. § 1681 (2019) (listing consumer privacy as a congressional purpose in enacting the FCRA). In their depositions, however, each Named Plaintiff essentially testified that they understood that Wal-Mart might conduct a background check (i.e., a consumer report), and did not object thereto. Plaintiff Pitre answered that he understood "that [Wal-Mart] may do a background check," and that this was "okay with [him]." Pitre Dep., Dkt. 63-3, Ex. 1 at D 007. Plaintiff Wilson affirmed that she "understood that a background check may be needed," and was "okay with" such a background check—in fact, that she *wanted* Wal-Mart to conduct a background check so she could get hired. Wilson Dep., Dkt. 63-3, Ex. 2 at D 013-015. And Plaintiff Walters testified that she understood, at least "a little bit," that Defendant might run a background check, and that, in any case, she wanted the job and "would have signed any form that was put in front of [her]." Walters Dep., Dkt. 63-3, Ex. 3 at D 023.

It appears on this record—indeed, from their own admissions—that Named Plaintiffs had the understanding, and gave the consent, that § 1681b(b)(2)(A) was intended to secure. Moreover, the only injury Plaintiffs identify is that, as a result of Defendant's deficient disclosure forms, they "have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA," FCA ¶ 36—or, put differently, that Defendant "obtained Plaintiffs' personal information in violation of their statutorily protected rights," MSJ Opp. 5. If, as the Supreme Court has established, there is a category of "bare procedural violation," then it must certainly encompass the wrongdoing alleged in Plaintiffs' first cause of action.

Similar cases in the Ninth Circuit, while not binding on this Court, reinforce this conclusion. The Ninth Circuit, for example, recently affirmed the dismissal of an FCRA case on standing grounds, holding that the "pleadings claim only that WinCo's job application forms failed to comply with the FCRA, but do not explain how those alleged violations harmed, or presented a material risk of harm to, the interests safeguarded by the statute." *Mitchell v. WinCo Foods, LLC*, 743 F. App'x 889, 889 (9th Cir. 2018). Because there was no adequate showing of an actual harm, like confusion, the district court's dismissal for lack of standing was proper. *Id.* And cases in the Northern District of California have followed similar reasoning. When job applicants have not claimed (1) that the disclosure forms had impaired their understanding, or (2) that, had the

disclosure complied with the FCRA, they would not have authorized the background check, courts have determined that the alleged injury, per *Spokeo*, did not exceed a bare procedural violation, and did not support standing. *See, e.g.*, *Williams v. Nichols Demos, Inc.*, No. 5:17-cv-7101-EJD, 2018 WL 3046507, at *5 (N.D. Cal. June 20, 2018); *Lee v. Hertz Corp.*, No. 15-cv-04562-BLF, 2016 WL 7034060, at *5 (N.D. Cal. Dec. 2, 2016).

Plaintiffs disagree, citing *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), to argue that they have alleged more than a bare procedural violation. MSJ Opp. 5-6. This reliance is misplaced. In that case, the Ninth Circuit considered whether Facebook's use of facial recognition technology violated the Illinois Biometric Information Privacy Act (BIPA), which, in relevant part, creates "various obligations regarding the collection, retention, disclosure, and destruction of biometric identifiers and biometric information." 932 F.3d at 1269 (quoting *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1203 (Ill. 2019)). The Ninth Circuit found that the alleged statutory violation—viz., "the collection, use, and storage of biometric identifiers without a written release . . . and the failure to maintain a retention schedule or guidelines for destroying biometric identifiers"—was not merely procedural, but would *necessarily* violate the underlying substantive privacy interests. *Id.* at 1274-75.

The *Patel* court continued by specifically distinguishing its result from the example of an FCRA violation that breaches the terms of the statute without harming the substantive interest the FCRA was created to protect. *Id.* And the injury Named Plaintiffs have alleged is just of this sort. As they explained in their depositions, Named Plaintiffs understood that they might be subject to a background check—and, because they wanted to work at Wal-Mart, they consented to said background checks. Furthermore, there is no suggestion that they would have *withheld* their consent, had Defendant's disclosure forms been FCRA-compliant. Unlike the plaintiffs in *Patel*, then, Named Plaintiffs have failed to set forth evidence of any injury beyond a bare procedural violation.

Plaintiffs' appeal to *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), is similarly mistaken. In that case, critically, Mr. Syed was surprised to learn that he was subjected to a background check while he was reviewing his personnel file, i.e., well after he had signed the disclosure and authorization form. 853 F.3d at 497-98, 499. The Ninth Circuit held that this belated discovery justified a reasonable inference that Mr. Syed was confused by the disclosure form, did not understand that he was authorizing a background check, and would not have authorized a background check had the forms at issue been FCRA-compliant. *Id.* at 499-500. Named Plaintiffs, however, understood that Defendant might run a background check, and because they wanted Defendant to hire them, they

consented to the potential background checks. *See* Pitre Dep., Dkt. 63-3, Ex. 1 at D 007; Wilson Dep., Dkt. 63-3, Ex. 2 at D 013-015; Walters Dep., Dkt. 63-3, Ex. 3 at D 023.

Plaintiffs' reference to *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016)—cited approvingly by the *Syed* court—is also inapposite. In *Thomas*, the plaintiff alleged that the defendants violated his right to confidentiality by procuring a consumer report "without first providing the required disclosure or obtaining his written consent." 193 F. Supp. 3d at 636. The *Thomas* court held that this violation of "the statutory right to privacy" constituted a concrete injury and supported Article III standing. *Id.* Again, however, Named Plaintiffs have not adduced any evidence that their *substantive* rights were violated; unlike the plaintiff in *Thomas*, Named Plaintiffs were given disclosure forms, understood that Defendant might procure a background check, and consented to the background check process. The violations they allege are bare procedural violations, and *Spokeo* has held that such injuries cannot establish standing.

Because Named Plaintiffs have not alleged a sufficiently concrete injury, they lack Article III standing to bring the first cause of action. As such, they are also disqualified from bringing the first cause of action on behalf of the Class. *See NEI*, 926 F.3d at 532 (citing *O'Shea*, 414 U.S. at 494).

### 3.     The Third Cause of Action

Plaintiffs' third cause of action alleges that Defendants failed to make the disclosures required under the ICRAA, Cal. Civ. Code § 1786 *et seq.* In relevant part, Section 1786.16 provides that consumer reports "for employment purposes" can only be procured if "a clear and conspicuous disclosure" is provided to the consumer in writing "in a document that consists solely of the disclosure." Civ. § 1786.16(a)(2)(B).

Plaintiffs allege that Defendant's disclosure forms did not consist solely of the disclosure, and thus contained extraneous information and were not clear and conspicuous. FAC ¶¶ 58-61. These, however, are the same violations alleged under the FCRA in the first cause of action, and they remain bare procedural violations under California law. While the California State Legislature can establish procedural safeguards on background checks, it cannot, any more than the U.S. Congress, allow plaintiffs to sue in federal court, in violation of Article III, on the basis of procedural violations unaccompanied by concrete injury. As such, for the reasons discussed with respect to the first cause of action above, Named Plaintiffs lack standing to bring the third cause of action in federal court—and, consequently, neither can they bring this claim on behalf of the Class. *See NEI*, 926 F.3d at 532 (citing *O'Shea*, 414 U.S. at 494).

### 4.     The "Law of the Case" Is Inapposite

Finally, Plaintiffs argue that "the law of the case" doctrine precludes this Court from reconsidering the question of standing, citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993), for the proposition that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." Application of this doctrine is entirely inappropriate to the present Article III standing analysis.

As the Supreme Court has repeatedly held, "[w]e have an obligation to assure ourselves of litigants' standing under Article III." *Frank*, 139 S. Ct. at 1046 (quoting *DaimlerChrysler*, 547 U.S. at 340). The importance of this mandate is self-evident. Were we to ignore the question of standing, or to blindly follow "the law of the case," we would run the risk of deciding cases ultra vires. Plaintiffs' argument, at bottom, invites us to stray from the case-or-controversy requirement of Article III—to adjudicate a case in violation of a constitutional bedrock—merely because this Court had found standing at an earlier stage of the litigation. The Court declines, obviously, to reach an absurd and unconstitutional result, and accordingly rejects Plaintiffs' contention that the law of the case is determinative of their Article III standing.

In sum, Named Plaintiffs lack standing for all three causes of action; so too, then, does the Class. *See NEI*, 926 F.3d at 532 (citing *O'Shea*, 414 U.S. at 494). Ninth Circuit precedent therefore requires that the Class be decertified. *NEI*, 926 F.3d at 532. As such, the Court hereby GRANTS Defendant's Motion to Decertify.

### B.     The Court Must Remand the Case for Further Proceedings

The remaining issue is whether the Court should remand the case or enter judgment in Defendant's favor. Plaintiffs argue that remand is the correct result when a plaintiff is found to lack standing after removal from state court, pursuant to *Polo v. Innoventions International, LLC*, 833 F.3d 1193 (9th Cir. 2016). Defendants, by contrast, argue that remand is inappropriate when it "would be futile," citing *Bell v. City of Kellogg*, 922 F.2d 1418, 1424-25 (9th Cir. 1991). Defendants also point to the academic distinction between justiciability and jurisdiction; suggest that Plaintiffs would also lack standing in California state courts; and argue that a remand would be nonsensical.

As far as established black-letter law goes, Plaintiffs undoubtedly have the stronger argument. *NEI* does provide that, when a class has been certified and all class

representatives are later found to lack standing, "the class should be decertified and the case dismissed." *NEI*, 926 F.3d at 532. But, as Plaintiffs correctly observe, *NEI*, unlike the instant action, *originated* in federal court; remand was thus unavailable as a procedural option.

Under 28 U.S.C. § 1447, by contrast, if a case is removed and it later "appears that the district court lacks subject matter jurisdiction, the case shall be remanded." As the Ninth Circuit explained in *Polo*, this remand—consistent with the statute's use of *shall*—is generally mandatory. 833 F.3d at 1196. And the *Polo* court was unequivocal in its reasoning: "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Id.* (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)).

Defendant attempts to avoid this outcome by highlighting the academic distinction between "justiciability" and "subject matter jurisdiction." At the outset, it should be noted that courts, including the Supreme Court, frequently elide this distinction. *See, e.g.*, *ASARCO*, 490 U.S. at 612 ("The second *jurisdictional* issue is . . . whether, under federal standards, the case was *nonjusticiable* at its outset because the original plaintiffs lacked standing to sue . . . ." (emphasis added)); *Polo*, 833 F.3d at 1196 ("[A] removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) . . . ."); *Moore v. United Parcel Serv., Inc.*, No. 18-cv-07600-VC, 2019 WL 2172706, at *2 (N.D. Cal. May 13, 2019) (remanding for lack of subject matter jurisdiction after finding plaintiff lacked standing); *Miranda v. Magic Mountain LLC*, No. CV 17-07483 SJO (SS), 2018 WL 571914, at *3 (C.D. Cal. Jan. 25, 2018) (same); *U.S. House of Representatives v. Burwell*, 130 F. Supp. 3d. 53, 64-65 (D.D.C. 2015) (treating standing as a "jurisdictional requirement[] of Article III," and justiciability as "the advisability of hearing the case").

Furthermore, the distinction is without a functional difference in the instant case. Whether categorized as a failure of justiciability or of subject matter jurisdiction, the lack of Article III standing necessitates the same conclusion—namely, that this Court has no authority to further adjudicate this action. As such, the Court would have to cross its constitutional boundaries to enter summary judgment in favor of Defendant. The proper course of action is instead to remand to a court with the power to hear this case.

Nor would remand be "futile," as Defendants suggest, pursuant to *Bell v. City of Kellogg*. As the *Polo* court observed, some twenty-five years after *Bell*, "the *Bell* rule has been questioned, and may no longer be good law." 833 F.3d at 1197. Even assuming *Bell*

has some remaining vitality, however, it does not require the Court to enter judgement for Defendants instead of remanding the case. For the *Bell* rule to apply, "a district court must have 'absolute certainty' that a state court would 'simply dismiss[] the action on remand.'" *Polo*, 833 F.3d at 1198 (alteration in original) (quoting *Bell*, 922 F.2d at 1425). The Court does not find that the outcome of Plaintiffs' case in state court "is so clear as to be foreordained"; the proper procedural result is therefore remand, rather than the grant of Defendant's MSJ. *See id.*; *see also Nichols Demos, Inc.*, 2018 WL 3046507, at *6 (finding remand was not futile because Article III standing doctrine is not binding on state courts). The Court will accordingly allow the state court—in the exercise of its proper parallel jurisdiction—to determine whether Plaintiffs have standing under California law.

Finally, Defendant makes passing reference to a law review comment to suggest that remanding the case would be nonsensical. To the extent Defendant believes that state courts should not be allowed to enforce federal statutes when federal courts cannot do so, Defendant has misunderstood the nature of our federalist system. In general, "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and the state-court adjudication." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981). In the instant case, there is no such contrary provision or incompatibility afoot; indeed, Congress *authorized* individuals to sue under the FCRA in both state and federal court. *See* 15 U.S.C. § 1681p (2019) ("An action to enforce any liability created under this title may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction . . . ."). And as the *Polo* court made eminently clear, "[s]tate courts are not bound by the constraints of Article III," even when federal courts may not constitutionally hear a case. 833 F.3d at 1196 (citing *ASARCO*, 490 U.S. at 617). Given the federalist structure of our government, it is therefore entirely sensible for the Court to remand the case and allow Plaintiffs a chance to adjudicate their claims under the parallel jurisdiction of the California state courts.

Because it is required to do so by federal statute and Ninth Circuit precedent, the Court hereby REMANDS the case to the state court. The Court takes no position as to Plaintiffs' ability, on remand, to establish standing or certify a class under the relevant standards of California law.

## IV. Disposition

For the reasons set forth above, the Court GRANTS Defendant's Motion to Decertify and REMANDS the instant action to the state court. Defendant's Motion for

Summary Judgment and Plaintiffs' Motion for Summary Adjudication are therefore both DENIED AS MOOT.

The Clerk shall serve this minute order on the parties.